UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **NORTHAMPTON RESTAURANT GROUP, INC., et al.,** | ) ) ) | Case No. 5:09CV02630 |
| Plaintiffs, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| **FIRSTMERIT BANK, N.A.,** | ) ) | |
| Defendant. | ) | |

This matter is before the Court on a motion to dismiss for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant FirstMerit Bank, N.A. (Doc. No. 14.) For the following reasons, the motion is GRANTED.

**I. Background**

Plaintiffs Northampton Restaurant Group, Inc. and Hamburger Station, Inc., which operate restaurant businesses in Ohio, entered into commercial banking relationships with FirstMerit, establishing and maintaining deposit accounts and credit card accounts with the bank. An Account Agreement, which included a separate set of Terms and Conditions, governed the deposit accounts, while a Corporate Bank Card Agreement governed the credit card accounts. The deposit accounts and the credit card accounts were linked by so-called Freedom Checking Agreements, pursuant to which Plaintiffs authorized FirstMerit to draw cash advances on Plaintiffs' credit cards in order to cover any overdrafts on the deposit accounts.

Plaintiffs filed this putative class action complaint, challenging FirstMerit's practices relative to the sequencing of transactions charged to their deposit accounts. They

contend that, instead of processing transactions in the order of receipt, FirstMerit re-ordered the transactions from highest to lowest on any given day to reduce the account balance as quickly as possible. According to Plaintiffs, this practice artificially increased the number of overdraft fees FirstMerit charged to their accounts. It also prompted FirstMerit to draw cash advances from Plaintiffs' credit cards to cover the overdrafts, resulting in the imposition of additional fees and finance charges. Plaintiffs challenge these practices as improper and in contravention of the relevant agreements, asserting claims for breach of contract, breach of the duty of good faith and fair dealing, and common law conversion. They also charge that these actions failed to comply with the bank's policies regarding the availability of funds in violation of the Expedited Funds Availability Act and its implementing regulations, and that FirstMerit improperly failed to disclose such policies to Plaintiffs.

FirstMerit moved to dismiss, arguing that the complaint fails to state any viable claims for relief. Plaintiffs opposed the motion (Doc. No. 16), and FirstMerit replied. (Doc. No. 17.) The matter is ripe for decision.

**II. Law and Analysis**

    **A. Standard of Review**

A complaint is subject to dismissal if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). In reviewing the motion, the Court construes the allegations in the complaint in the light most favorable to the plaintiffs, accepts all well-pleaded factual allegations as true, and determines whether the movant

is entitled to judgment as a matter of law. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B. Breach of Contract

The First Amended Complaint ("FAC") describes five putative classes, the first three of which relate to Plaintiffs' breach of contract claims, and consist of:

> [(1)] All FirstMerit commercial customers who have or had a checking account with FirstMerit from January 1, 2007 to present, who incurred overdraft fees on payment of items when they had sufficient funds in their accounts to cover those items when FirstMerit received them, but who were assessed an overdraft fee as a result of FirstMerit's practice of re-sequencing items for payment from highest to lowest dollar amount before assessing overdraft fees;
>
> [(2)] all FirstMerit commercial customers who have or had a checking account with FirstMerit from January 1, 2007 to present, who had a credit line in place for overdraft protection and [were] charged overdraft fees by FirstMerit when FirstMerit used the credit line to cover overdrafts, as well as being charged finance charges by FirstMerit for the use of the credit line;
>
> [(3)] all FirstMerit commercial customers who have or had a checking account with FirstMerit from January 1, 2007 to present, who had a credit line in place for overdraft protection and whose credit line was used to cover items presented for payment when sufficient funds were available in the checking account to cover such items;

(FAC ¶ 20.)

Properly understood, these allegations raise two core contractual claims. The first, implicated by both classes one and three, challenges FirstMerit's re-ordering of transactions. The second challenges FirstMerit's ability to impose an overdraft fee where the Plaintiffs had a credit account in place to provide overdraft protection and FirstMerit in fact drew upon the credit account to cover the overdraft.

3

**1. Re-ordering of Transactions**

Although classes one and three as defined in the FAC frame the issue differently—class one challenges overdraft fees charged when customers allegedly "had sufficient funds in their accounts to cover those items when FirstMerit received them," while class three complains about FirstMerit's tapping customers' credit lines for cash advances "to cover items presented for payment when sufficient funds were available in the checking account to cover such items"—they target the same conduct. The allegation (common to both class descriptions) that sufficient funds were available in the checking accounts to cover items presented for payment necessarily presupposes that FirstMerit was obligated to process transactions in the order of receipt, rather than re-ordering them from highest to lowest. Thus, classes one and three state the same claim for breach—that FirstMerit improperly re-ordered the transactions—so the Court will treat them as a single claim.

Under Ohio law, recovery for breach of contract requires the plaintiff to plead and prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Jarupan v. Hanna*, 173 Ohio App. 3d 284, 294 (10th Dist. 2007) (quoting *Powell v. Grant Med. Ctr.*, 148 Ohio App. 3d 1, 10 (10th Dist. 2002)).

FirstMerit argues that the FAC fails to state a claim for breach based on the bank's re-ordering of transactions because the parties' written agreements (including the account Terms and Conditions, which they attach to the motion) and Ohio law expressly permit such conduct. In response, Plaintiffs do not dispute the meaning of either Revised Code § 1304.29(B) or the Terms and Conditions, conceding that both supplied FirstMerit with authority to re-sequence transactions from highest to lowest. They seek to avoid dismissal, however, with two

arguments: (1) that FirstMerit cannot rely upon on the Terms and Conditions at this stage because it has not yet proven that the document attached to the motion to dismiss containing those Terms and Conditions was a part of the parties' contract; and (2) that although § 1304.29(B) may authorize FirstMerit to re-order transactions "to pay the largest item first, it does not give Defendant the right to pay no items, simply because there [were] not enough funds to pay the largest item presented." (Pls.' Opp'n to Mot. to Dismiss at 7.) Accepting these arguments at face value leaves Plaintiffs without a properly pleaded claim for breach.

  Although Plaintiffs did not attach any contracts to the complaint, FirstMerit appended to its motion to dismiss copies of what it contends constitute the pertinent agreements, including the Terms and Conditions referenced above. Pointing to the July 2009 date on the document, Plaintiffs argue that it cannot be considered because "[t]here is no indication whatsoever about whether either of the Plaintiffs actually received these documents or when they received them." (*Id.* at 8.) With this argument, Plaintiffs aim to create a factual dispute about what contract controlled the parties' relationship. But by avoiding a confrontation with the Terms and Conditions (which they appear to concede permitted re-sequencing), Plaintiffs' lose sight of their affirmative obligation to state a claim for relief. Having alleged a breach of contract premised upon the re-ordering of transactions from highest to lowest, Plaintiffs must either present a copy of the contract that prohibits FirstMerit from doing so or spell out the pertinent contractual language in the complaint in order to state a viable claim. The FAC contains no such allegations, and Plaintiffs declined to supply copies of any of the contracts, while balking at FirstMerit's efforts to do so. This leaves the Court with nowhere to turn to determine whether the complained of transaction re-sequencing actually violated any agreement between the parties

and, as a result, leaves Plaintiffs without a properly pleaded claim for breach.

Plaintiffs' second argument in opposition to dismissal fares no better. Conceding FirstMerit's ability under Ohio Revised Code § 1304.29(B) to re-order transactions from highest to lowest (and thus to process the highest transaction first), Plaintiffs contend that such authority "does not give Defendant the right to pay no items, simply because there [were] not enough funds to pay the largest items presented." (Pls.' Opp'n to Mot. to Dismiss at 7.) But this argument cannot possibly mean what Plaintiffs suggest, i.e., that FirstMerit paid "no items," since Plaintiffs otherwise insist that "the point of [their] claim [. . .] is that Defendant charged overdraft fees even when there were sufficient funds in the account to pay item presented." (*Id.*) Had FirstMerit simply paid "no items," then the funds sitting in Plaintiffs' accounts would have remained there while their transactions went unprocessed, and no overdraft fees would have been incurred. As the Court understands the FAC, Plaintiffs assert that FirstMerit improperly charged overdraft fees when funds existed to pay smaller items processed on any given day, but the re-ordering of transactions from highest to lowest led to the account being overdrawn before FirstMerit processed the smaller items. Viewed this way, the breach of contract claim pressed by classes one and three remains predicated on the alleged impropriety of transaction re-sequencing, which, as explained above, Plaintiffs failed to viably plead as a breach of contract.

### 2. Overdraft Charges in Connection with Cash Advances

Class two consists of customers "who had a credit line in place for overdraft protection and [were] charged overdraft fees by FirstMerit when FirstMerit used the credit line to cover overdrafts, as well as being charged finance charges by FirstMerit for the use of a credit line." (FAC ¶ 20.) According to Plaintiffs, this conduct was improper because the credit accounts

were linked to the deposit accounts in order to prevent overdrafts from occurring.  (*Id.* ¶ 33.) Thus, class two challenges FirstMerit's practice of charging both the overdraft fee and the cash advance fee (along with the consequent finance charges) in situations where FirstMerit used cash advances from the credit accounts to cover shortfalls in the deposit accounts.

This claim suffers from similarly defective pleading. Neither the FAC nor Plaintiffs' response to the motion to dismiss walks through the contractual language that FirstMerit allegedly breached. Nor do Plaintiffs explain when FirstMerit charged these improper overdrafts or how much they cost. In short, Plaintiffs fail to supply the Court with any basis for concluding that simultaneously charging overdraft and cash advance fees violated the parties' agreements, since Plaintiffs refuse (and rebuff FirstMerit's attempt) to tell the Court what those agreements say. As a result, their contract claims are subject to dismissal.

### C. Breach of Duty of Good Faith and Fair Dealing

"When parties enter into contracts, they are bound to each other by 'standards of good faith and fair dealing.'" *Laurent v. Flood Data Serv., Inc.*, 146 Ohio App. 3d 392, 399 (9th Dist. 2001) (quoting *Bolling v. Clevepak Corp.*, 20 Ohio App. 3d 113, 121 (6th Dist. 1984)). "Good faith is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Ed Schory & Sons, Inc. v. Soc'y Nat'l Bank*, 75 Ohio St. 3d 433, 443-44 (1996) (internal quotation marks and citations omitted).

Under Ohio law, "good faith is part of a contract claim and does not stand alone" as an independent cause of action. *Lakota Local Sch. Dist. Bd. of Educ. v. Brickner*, 108 Ohio App. 3d 637, 646 (6th Dist. 1996); *see also Northeast Ohio College of Massotherapy v. Burek*,

144 Ohio App. 3d 196, 204 (7th Dist. 2001). In apparent recognition of this, the FAC combines the breach of contract and breach of duty of good faith and fair dealing into a single claim. (FAC ¶¶ 28-36.) As explained above, the FAC fails to state a viable claim for breach, and thus necessarily fails to state a claim for bad faith or unfair dealing. *See Firelands Reg'l Med. Ctr. v. Jeavons*, No. E-07-068, 2008 WL 4408600, at *4 (Ohio Ct. App. 6th Dist. Sept. 30, 2008).

### D. Conversion

A claim for conversion, defined as the "wrongful exercise of dominion or control over property belonging to another, in denial of or under a claim inconsistent with his rights," *Bench Billboard Co. v. Columbus*, 63 Ohio App. 3d 421, 428 (10th Dist. 1989), requires proof of "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages," *Dice v. White Family Cos.*, 173 Ohio App. 3d 472, 477 (2d Dist. 2007) (quoting *Haul Transp. of VA, Inc. v. Morgan*, No. CA 14859, 1995 WL 328995, at *3 (Ohio Ct. App. 2d Dist. June 2, 1995)). Though conversion actions typically involve takings of identifiable personal property, *Wiltberger v. Davis*, 110 Ohio App. 3d 46, 55 (10th Dist. 1996), they may, in limited circumstances, also cover intangible rights, *see Schafer v. RMS Realty*, 138 Ohio App. 3d 244, 281-86 (2d Dist. 2000).

Reasserting the allegation that FirstMerit drew cash advances from Plaintiffs' credit accounts "to pay for items presented for payment when sufficient funds were available to pay for such items in the customers' checking accounts," Plaintiffs contend that this use of the credit accounts constituted an unlawful conversion of funds by FirstMerit. Although pled vaguely, as near as the Court can determine, Plaintiffs appear to claim that FirstMerit

"converted" funds from their credit accounts by drawing cash advances to pay for overdrafts. (*See* Pls.' Opp'n to Mot. to Dismiss at 9-10.) The Court finds this formulation of Plaintiffs' conversion claim fatally flawed.

First, a plaintiff can state a claim for conversion involving money only where the funds are "earmarked" or otherwise specifically capable of identification, such as "money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered." *Morgan*, 1995 WL 328995, at *4 (quoting *Gray v. Liberty Nat'l Life Ins. Co.*, 623 So.2d 1156, 1160 (Ala. 1993)). In other words, "[a]n action will not lie for the conversion of a mere debt." *NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 82 (S.D. Ohio 1996). "[A]nd where there is only a relationship of debtor and creditor, not an obligation to return identical money, an action for conversion of the funds representing the indebtedness will not lie against the debtor." *Id.* Thus, conversion occurs "where there is an obligation to keep intact and deliver specific money, 'rather than to merely deliver a certain sum.'" *Macula v. Lawyers Title Ins. Corp.*, No. 1:07CV1545, 2008 WL 3874686, at *5 (N.D. Ohio Aug. 14, 2008) (quoting *Morga*n, 1995 WL 328995, at *4).

Here, the funds purportedly converted were those FirstMerit extended to Plaintiffs as cash advances drawn on their credit accounts. If, after processing the daily transactions in the deposit accounts, the balance dipped below zero and led to an overdraft charge, FirstMerit would charge a cash advance to the corresponding credit account, put the money in the deposit account, and pay the offending transaction and the overdraft fee out of the deposit account. In doing so, FirstMerit kept the money earned from the overdraft fee for its own account.

From this understanding of the funds' journey, two salient shortcomings emerge:

the FAC stands devoid of any allegation that (1) Plaintiffs' entrusted specific funds to FirstMerit's care; or (2) FirstMerit sequestered or earmarked the purportedly converted funds such that, even assuming a wrongful taking, the resultant obligation represents something more than general indebtedness. On the contrary, the funds originated as extensions of credit by FirstMerit, were deposited into Plaintiffs' accounts at FirstMerit, and taken back by FirstMerit as overdraft fees, all the while remaining fungible electronic entries in a computer. Lacking the necessary elements of entrustment and sequestration, Plaintiffs' conversion claim fails as a matter of law.

### E. EFAA

Putative classes four and five assert violations of the EFAA. The FAC defines those classes as follows:

> [(4)] all FirstMerit commercial customers who have or had a checking account with FirstMerit from January 1, 2007 to present who were charged overdraft fees because of FirstMerit's failure to follow its own policy for availability of funds; and
>
> [(5)] all FirstMerit commercial customers who have or had a checking account with FirstMerit from January 1, 2007 to present who were not given proper disclosure of FirstMerit's policy on availability of funds.

(FAC ¶ 20.) Plaintiffs assert that by failing to follow its own policy for availability of funds, FirstMerit violated 12 C.F.R. §§ 229.10, 229.12, and 229.13, and that by failing to provide appropriate disclosures, it violated 12 C.F.R. §§ 229.13, 229.15, 229.16, and 229.17.

The EFAA is "a 1987 law designed to accelerate the availability of funds to bank depositors and to improve the Nation's check payment system," *Bank One Chicago, N.A. v. Midwest Bank & Trust Co.*, 516 U.S. 264, 266 (1996), by "establish[ing] specific time periods during which banks must make deposited funds available to their customers for check writing

and cash withdrawals." *Lynch v. Bank of Am., N.A.*, 493 F. Supp. 2d 265, 267 (D.R.I. 2007). "To reduce banks' risk of nonpayment, the Act grants the Board of Governors of the Federal Reserve System [. . .] broad authority to prescribe regulations expediting the collection and return of checks." *Bank One Chicago*, 516 U.S. at 267.

The EFAA concerns itself exclusively with making deposited funds available for withdrawal in a timely manner. Nowhere in the FAC do Plaintiffs accuse FirstMerit of delaying the deposit of funds into Plaintiffs' accounts. Instead, the FAC conclusorily avers that FirstMerit "fail[ed] to follow its own policy and federal law regarding availability of funds and fail[ed] to give proper disclosures of such policy, in violation of federal law," (FAC ¶ 15), and then supplies a laundry list of federal regulations FirstMerit supposedly violated, without explaining the alleged violations.

The Court agrees with FirstMerit that Plaintiffs' EFAA claims fail to comply with the pleading requirements of Rule 8. Plaintiffs make no effort to explain how the EFAA statutes regarding the availability of deposited funds relate to the bank practices Plaintiffs complain of, or how the disclosure rules implementing those statutes imposed obligations on FirstMerit that it failed to fulfill.

### III. Conclusion

For the foregoing reasons, FirstMerit's motion to dismiss the FAC pursuant to Rule 12(b)(6) is GRANTED.

**IT IS SO ORDERED**.

Dated: August 3, 2010

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**